Hicks-TT v. Garner et al 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-269-CV

Â Â Â Â Â TITUS TERRANCE HICKS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â JACK M. GARNER, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

From the 52nd District Court
Coryell County, Texas
Trial Court # 28,598
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Titus Terrance Hicks appealed from the court's dismissal of his in forma pauperis petition. 
See Tex. Civ. Prac. & Rem. Code Ann. 13.001 (Vernon Supp. 1994). Hicks filed his notice
of appeal and affidavit of inability to pay costs on August 26, 1994, and the transcript was filed
in this court on August 30. Although his brief was due on September 29, no appellant's brief has
been filed. See Tex. R. App. P. 74(k). Appellate Rule 74(l)(1) provides:
Civil Cases. In civil cases, when the appellant has failed to file his brief in the time
prescribed, the appellate court may dismiss the appeal for want of prosecution, unless
reasonable explanation is shown for such failure and that appellee has not suffered
material injury thereby. The court may, however, decline to dismiss the appeal,
whereupon it shall give such direction to the cause as it may deem proper.
Id. 74(l)(1).
Â Â Â Â Â Â More than thirty days have passed since Hicks' brief was due. No reasonable explanation has
been presented for the failure to file a brief. Therefore, this appeal is dismissed for want of
prosection. See id.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Thomas,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Dismissed
Opinion delivered and filed November 2, 1994
Do not publish 



 The opinion will issue.

   So should I knock myself out to get
everything else done that I am responsible for, complete the extensive,
additional research needed to vote on this particular appeal, for the purpose
of trying to meet an artificial deadline set by the other two judges on this
Court?Â  I have done this for the last several months and the result is that I
have devoted more and more of my time to dissenting and concurring opinions and
have been unable to devote time to writing on my own cases.Â  And frequently I
find the draft opinions in my cases must be converted to concurring or
dissenting opinions.Â  

I need to spend this time working on cases
assigned to me, older cases, cases of higher priority under the statutes and
rules, so that those parties may get a disposition of their appeal.Â  It is not
that I do not want to participate in this opinion; it is that, at this time,
this case does not have the priority to put it before all my other
responsibilities.

Â Â Â Â Â Â Â Â Â  So, while I cannot research all the
issues and vote on the propriety of the judgment, let me lay out the general
scope of what the issues are that need to be researched and possibly decided.Â  I
realize this is not a cogent, tight piece of legal writing on specific legal
issues, and on occasion may seem more like my rambling thoughts.Â  In a way,
that is exactly what this is.Â  But given the time constraints the majority has
put me under, I have no alternative.

Â Â Â Â Â Â Â Â Â  And I will focus this analysis primarily
on the deficiency in the opinion that primarily attracted my attention Â the decision
refusing to review the removal of Philip Jr. as executor and the further
refusal to review the propriety of the appointment of a successor executor.Â 
This issue looms large in probate practice because it deals primarily with the
transfer of contested matters between the constitutional county court and
district court, with the determination of what is a final order, when must an
order be appealed, and the consequence of failing to appeal such an order on
the ability to address those issues again in the same litigation.

Â Â Â Â Â Â Â Â Â  First, and maybe more important than
any other issue in this case, is the question regarding the transfer of probate
matters to district court.Â  Indeed, the issue could very well be broad enough
to ask; if a trial court could decide an issue where everyone appearing before the
trial court had taken all the statutory or rule-required procedural prerequisites,
does the trial court lack jurisdiction to decide the issue if those procedural
prerequisites have not occurred?Â  Because of Dubai and its progeny, my tentative
answer to this is, if the issue is one the court has, or could have, subject
matter jurisdiction of and the parties necessary for the decision are before
the court without objection to exercising jurisdiction over them or the subject
matter, then the trial court should be able to decide the issue presented and
that decision should be binding on the parties.Â  See Dubai Petroleum
Co. v. Kazi, 12 S.W.3d 71,75 (Tex. 2000).Â  I recognize there are some gross
generalizations here, but please consider my temporal limitations and not view
me too harshly.

Â Â Â Â Â Â Â Â Â  To reach this issue as it relates to
considering our jurisdiction to review the removal of Phillip Jr., the majority
opinion hangs precariously by a single thread.Â  That thread is whether a
pleading filed by the appellees can be properly characterized as a motion to
modify, correct, or reform a judgment, otherwise sometimes known generally as a
motion for new trial.Â  Characterizing a pleading for a party is dangerous
business.Â  Occasionally, courts do it when it is so obvious that the LilÂ
Abner Rule applies (any fool can see).

Â Â Â Â Â Â Â Â Â  But characterizing a document should
be done with extreme caution.Â  And if it is clear what the document is, it
should not be characterized as something else.Â  This is especially true if the
party who created the document has never characterized it in that particular
manner.Â  After all, it is that partyÂs document.Â  The corollary is also true.Â 
If it is clear what the document is not, then it certainly should not be
characterized as what it is not.

Â Â Â Â Â Â Â Â Â  To properly understand what document the
majority is relying on, we have to travel back in time to November 12, 2002.Â 
On this date three persons, Pamela, Bettie, and Norma, referring to themselves
as applicants, filed a pleading entitled ÂApplication to Remove Independent
Executor/Trustee and for Appointment of Successor and First Amended Petition.ÂÂ 
By way of this pleading, the applicants alleged all sorts of mismanagement by
Phillip Jr. and sought a wide variety of relief from him. Â In all, a dozen
delineated requests were included in the prayer.Â  The applicants were the widow
and two daughters of the deceased, Krumnow.Â  And just for good measure, they
also alleged that the other brother, Ray, is an unsecured creditor of
the estate and Âan alcoholic who would be unable to handle estate affairs.Â

Â Â Â Â Â Â Â Â Â  A hearing was held on February 12,
2003 on the above referenced application and some other motions.Â  On March 17,
2003, the trial court signed an order regarding the issues addressed at the
February 12 hearing.Â  The order denies the application and confirms Phillip Jr.
as the independent executor of KrumnowÂs Estate and trustee of KrumnowÂs trust.Â 
The order also contains some other provisions of relief for Pamela.

Â Â Â Â Â Â Â Â Â  Then a mere ten days after that order
was signed, Pamela, the widow, acting alone as the applicant, files the
All-Important-Motion (ÂAIMÂ). Â The opinion summarily concludes that it is a
motion to modify, correct, or reform, that is, a motion for new trial, of the
March 17, 2003 order.Â  I disagree.

The analysis to resolve the question of whether
this document is a motion for new trial begins with the title.Â  The title of
the AIM is ÂMotion to Return Property, For Injunctive Relief and Sanctions.ÂÂ  The
title does not sound like the trial court is being asked to reconsider its
order which confirmed Phillip Jr. as the independent executor and trustee.Â  

Next, I examined the parties to the motion.Â  The
AIM is brought only by Pamela Â the widow Â and not by the daughters who were
previously applicants in the motion for removal.Â  So, the applicants in the two
motions are different.Â  Also, the AIM is brought against Phillip Jr.,
individually and as executor of the estate of Krumnow, but is not brought
against Phillip Jr. as trustee.Â  Thus, the parties to the March 17, 2003 order
are not the same parties against whom the AIM seeks relief.

Â Â Â Â Â Â Â Â Â  Next, I examined the allegations of
the motion.Â  The AIM confirms that Phillip Jr. was appointed independent
executor on June 18, 2002.Â  The motion proceeds to complain about the
executorÂs interference with the widowÂs homestead rights.Â  Then there is an
allegation specifically referencing the application for removal, but clearly
implying that it is still pending and is a separate request for relief.Â  This
allegation is

Applicant is a party to the underlying
suit to Remove Independent Executor and to Appoint Successor, which is pending
in this Court.

Â 

(Emphasis added).Â  The pleading continues by
alleging that if the independent executorÂs bad conduct does not stop, she will
Âlose all of her personal property converted by Respondent, and will incur
substantial expense in finding a new place of residence.Â

Â Â Â Â Â Â Â Â Â  The motion then has a bold heading
ÂElements For Injunctive Relief.ÂÂ  The first paragraph under this caption, a
single sentence, is the only paragraph that in any way might touch on the issue
of removal of Phillip Jr. as independent executor, but in no way could it be
considered as being related to his removal as trustee.Â  The paragraph states

In light of the above described facts, Applicant
seeks removal of the Executor and the Appointment of a successor executor
pursuant to Â§ 149C, Tex. Prob. Code Ann.

Â 

First, it is important to note that section 149C
of the Probate Code is for removal of an independent executor for a number of
grounds, and the ground under which Phillip Jr.Âs removal is sought is never
specified.

Â Â Â Â Â Â Â Â Â  But before too much emphasis is placed
on this lone sentence in a nine page pleading, the remedies and prayer sections
of the pleading deserve careful attention.Â  Nowhere in the roughly three pages
devoted to ÂRemedyÂ and ÂPrayerÂ does it ever mention removal of the
independent executor.Â  Instead, the Remedy and Prayer clearly seek to maintain
the status quo, and the status quo is that Phillip Jr., at that time, is the
appointed and confirmed independent executor AND trustee.

Â Â Â Â Â Â Â Â Â  So that you are not reliant on my
characterization of the ÂRemedyÂ and ÂPrayerÂ as not seeking to modify the
order denying removal, I will set them out verbatim:

REMEDY

Â 

19.Â Â Â Â  Applicant has met her burden by
establishing each element which must be present before injunctive relief can be
granted by this court, therefore Applicant is entitled to the requested
temporary injunction.

Â 

20.Â Â Â Â  In order to preserve the status quo during
the pendency of this action, Applicant requests the Court to temporarily enjoin
the Respondent, PHILLIP M. KRUMNOW, JR., his agents, employees, attorneys or
anyone acting on his behalf (a) to immediately turn over to the Applicant all
keys to all of the new locks which he installed on the doors to the ApplicantÂs
residence; (b) to immediately return all personal property he has removed, or
caused to be removed, from the ApplicantÂs residence, or to account for that
property and immediately pay to the Applicant the full replacement value of any
property removed by him which cannot be returned; (c) to cease interfering with
the rights of the Applicant to the use and enjoyment of the ApplicantÂs
residence (i.e., the homestead property); (d) to immediately return and cause
to be reinstalled in proper working order the pump to the well on the
ApplicantÂs property; and (e) after the pump is properly reinstalled, to at all
times remain at least 1000 yards away from the Applicant, all members of her
family, and the ApplicantÂs place of residence.

Â 

21.Â Â Â Â  It is essential that the court
immediately and temporarily enjoin the Executor, PHILLIP M. KRUMNOW, JR., his
agents, employees, attorneys or anyone acting on his behalf (a) to immediately
turn over to the Applicant all keys to all of the new locks which he installed
on the doors to the ApplicantÂs residence; (b) to immediately return all
personal property he has removed, or caused to be removed, from the ApplicantÂs
residence, or to account for that property and immediately pay to the Applicant
the full replacement value of any property removed by him which cannot be
returned; (c) to cease interfering with the rights of the Applicant to the use
and enjoyment of the ApplicantÂs residence (i.e., the homestead property); (d)
to immediately return and cause to be reinstalled in proper working order the
pump to the well on the ApplicantÂs property; and (e) after the pump is
properly reinstalled, to at all times remain at least 1000 yards away from the
Applicant, all members of her family, and the ApplicantÂs place of residence.Â 
It is essential that the court act immediately because the Respondent has
already ousted the Applicant from her residence and removed her personal
property from the residence, and is currently interfering with the ApplicantÂs
peaceful use and enjoyment of her property.

Â 

22.Â Â Â Â  RespondentÂs actions were done in utter
disregard of the ApplicantÂs rights, the jurisdiction of this Court and its
prior Orders and without any basis in law or fact.Â  RespondentÂs actions were
done solely for the purpose of harassment and to inconvenience and cause great
expense to the Applicant.Â  As such, RespondentÂs actions are sanctionable by
this Court under Texas Rules of Civil Procedure 13 and 215, and also under this
CourtÂs inherent authority to regulate itÂs [sic] docket and oversee the
disposition of the matters pending before it.Â  Therefore, Applicant moves that
this Court impose a monetary sanction in the sum of $5,000.00 personally
against the Respondent, PHILLIP M. KRUMNOW, JR. and direct him to pay that
amount to the Applicant within ten (10) days of the entry of the CourtÂs Order.

Â 

23.Â Â Â Â  As a further sanction, Applicant moves
that this Court direct the Respondent, PHILLIP M. KRUMNOW, JR., to pay the
ApplicantÂs AttorneyÂs [sic] the sum of $2,000.00 as their reasonable and
necessary attorneyÂs fees incurred in responding to this flagrantly illegal
conduct.

Â 

PRAYER

Â 

Â Â Â Â Â Â Â Â Â  WHEREFORE, PREMISES CONSIDERED, PAMELA
KRUMNOW, Applicant herein, respectfully prays that:

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  PHILLIP M. KRUMNOW, JR.,
Respondent, be noticed to appear and answer herein;

Â 

Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â  A temporary injunction will
issue after hearing to PHILLIP M. KRUMNOW, JR., Respondent, enjoining him and
his agents, employees, attorneys or anyone acting on his behalf (a) to immediately
turn over to the Applicant all keys to all of the new locks which he installed
on the doors to the ApplicantÂs residence; (b) to immediately return all
personal property he has removed, or caused to be removed, from the ApplicantÂs
residence, or to account for that property and immediately pay to the Applicant
the full replacement value of any property removed by him which cannot be
returned; (c) to cease interfering with the rights of the Applicant to the use
and enjoyment of the ApplicantÂs residence (i.e., the homestead property); (d)
to immediately return and cause to be reinstalled in proper working order the
pump to the well on the ApplicantÂs property; and (e) after the pump is
properly reinstalled, to at all times remain at least 1000 yards away from the
Applicant, all members of her family, and the ApplicantÂs place of residence.

Â 

Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â  The Court sets a reasonable
bond for the temporary injunction;

Â 

Â Â Â Â Â Â Â Â Â  D.Â Â Â Â Â  The Court impose a monetary
sanction and direct the Respondent, PHILLIP M. KRUMNOW, JR., to pay to the
Applicant the sum of $5,000.00 within ten (10) days of the entry of the CourtÂs
Order;

Â 

Â Â Â Â Â Â Â Â Â  E.Â Â Â Â Â Â  The Court impose as a further
monetary sanction that the Respondent, PHILLIP M. KRUMNOW, JR., to pay to the
ApplicantÂs attorneyÂs [sic] the sum of $2,000.00 as reasonable and necessary
attorneyÂs fees incurred as a result of his flagrantly illegal actions

Â 

Â Â Â Â Â Â Â Â Â  F.Â Â Â Â Â Â  For such other and further
relief, in law or in equity, to which Applicant may be justly entitled.

Â 

Â Â Â Â Â Â Â Â Â  If a reader is reading in context, it
is clear that what the motion is stating is not an allegation seeking the
removal, but is related to a necessary element to obtain a temporary injunction
Â it is a description of the underlying dispute on which the applicant for the
injunction believes she will prevail.Â  In this one sentence, the applicant
explains to the court what the underlying litigation involves and in the next
sentence of the motion, asserts that she will likely prevail on this pending issue.Â 
In this context, the preceding sentence cannot reasonably be viewed as a motion
for new trial of the order signed March 17, 2003.Â  It has never been
characterized as a motion for new trial by anyone other than a majority of the
justices on this Court.

Â Â Â Â Â Â Â Â Â  There is another impediment to the
cursory analysis and conclusion that the Motion to Return Property is a motion
for new trial.Â  The AIM was granted in the order of May 14, 2003, against
Phillip Jr. in his capacity as independent executor.Â  The order goes on
to remove Phillip Jr. as independent executor effective as of the date of the
hearing, the April 8, 2003 hearing, not the February 12, 2003 hearing.Â  The
order recites that the court is ruling on the Motion to Return Property and is
rendered after Âhaving read the pleadings, received and heard the evidence and
heard the arguments of counselÂ.ÂÂ  Nowhere does it reference the February 12,
2003 hearing, the evidence received, or the March 17, 2003 order.Â  This is not
the type recitation and effective date that would be used if the trial court
thought it was ruling on a motion for new trial of the issues considered at the
February 12, 2003 hearing as embodied in its March 17, 2003 order.

Â Â Â Â Â Â Â Â Â  Was the ÂMotion to Return Property,
for Injunctive Relief and SanctionsÂ a motion for new trial of the denial of
the ÂApplication to Remove Independent Executor/Trustee and for Appointment of
Successor and First Amended PetitionÂ? Â I think not.Â  The ÂMotion to Return
Property, Injunctive Relief and SanctionsÂ as it is called in its own footer,
is just that, a motion seeking the return of property to the widow, an
injunction to maintain the status quo, and a motion seeking the imposition of
sanctions.Â  But the majority Âfind[s]that PamelaÂs March 27, 2003 motion to
return property was a timely-filed motion to modify, correct, or reform a
judgment because it requests removal of Krumnow as executor and appointment of
a successor executor that was denied by the district courtÂs prior judgment of
March 17, 2003, and it was filed within thirty days after that order was
signed.ÂÂ  In their analysis, it does not matter what was intended by the
applicant, what the document is titled, who the parties are, what remedy was
requested, or what the prayer for relief was; it must be solely that one
sentence referencing the underlying suit for removal that controls the purpose
of the pleading.Â  You really have to be looking for a result to grasp onto a
thread so fine.

Â Â Â Â Â Â Â Â Â  So where does this leave me in my
analysis?Â  With the need to then resolve a lot more issues.Â  

Â Â Â Â Â Â Â Â Â  If this motion was not a motion for
new trial, it did not extend the time to file an appeal, or more importantly,
it did not extend the time for the court to modify its March 17, 2003 order,
what is the impact on the validity of the courtÂs May 14, 2003 order which the
majority characterizes as final but not timely appealed?Â  This is why I need
more time for analysis before I can vote.Â  I am simply uncertain where this
leaves the overall analysis based upon the issues as presented.

Â Â Â Â Â Â Â Â Â  But if my analysis is correct, that
the motion to return property did not extend the trial courtÂs plenary power, I
know where I would next turn my attention.Â  I would try to determine which of two
issues might be dispositive Â which one might be the silver bullet that can
easily and properly dispose of this appeal.

SILVER BULLET NUMBER ONE?

Â Â Â Â Â Â Â Â Â  The first issue is whether the trial
court would be barred by res judicata from considering the evidence presented
or available up through the previous hearing date, February 12, 2003, if the
issue of removal is subsequently considered.Â  I mean, letÂs face it, just
because Phillip Jr. is not removed on one date does not mean that regardless of
what he does, he can never be removed.Â  The question would thus be, if at a
subsequent hearing the issue of removal is again properly presented to
the trial court or raised by the court on its own motion, is the trial court
prohibited from considering available evidence that predates the last time the
trial court considered the issue and refused to remove the executor?Â  This is a
thorny question worth serious research and consideration.

Â Â Â Â Â Â Â Â Â  As for this Court, in what I could
characterize as an analogous situation, we have determined that the earlier
evidence cannot be considered.Â  In the context of the termination of parental
rights, we have held that if the rights are not terminated by the date set by
statute, the State can re-file its petition based on the same conduct in the
previous petition but cannot remove the child based on the same conduct as that
upon which the prior removal was sought. Â See In re Ruiz, 16
S.W.3d 921, 927 (Tex. AppÂWaco 2000, orig. proceeding).Â  Given the nature of
those proceedings, that seems odd, as it would also seem odd to prohibit
consideration of all of the prior conduct of an executor when evaluating his
removal.Â  My point here is that this merits a deeper analysis of the policy
issues behind the principles of res judicata to determine if that doctrine
should or should not be applied when the fact finder is again presented with
the question of whether to remove the independent executor.

Â Â Â Â Â Â Â Â Â  Another issue I raised in my
memorandum regarding the timeliness of the notice of appeal depends upon the import
of multiple bankruptcy proceedings.Â  Due to the manner and timing in which three
successive bankruptcy proceedings were filed and the effect of a party filing
bankruptcy on the running of timetables, see Tex. R. App. P. 8.2, I have been unable to determine on the
record currently before us, if, under the majorityÂs analysis, the ruling on
the motion for rehearing filed by Phillip Jr. on June 12, 2003 was ever
overruled by operation of law.Â  If not overruled because of the restarting of
the timetable each time the automatic bankruptcy stay was lifted, the motion
was overruled by written order on June 2, 2004.Â  Notice of appeal was then
filed July 1, 2004.Â  Thus, because a timetable that had not expired begins anew
when a proceeding is reinstated, it is entirely possible that the trial courtÂs
June 2, 2003 order was timely appealed.

SILVER BULLET NUMBER TWO?

Â Â Â Â Â Â Â Â Â  The second, but related, potentially
dispositive issue would be to consider whether there was some other theory
under which the trial court could have rendered an order of removal of Phillip
Jr. as independent executor.Â  To consider this issue, we also need to examine
whether the alternative theory was one that the parties or the trial court had
complied with the necessary procedural prerequisites for consideration and use
of that alternative theory.

Â Â Â Â Â Â Â Â Â  Of course, the most obvious
alternative theory is that the trial court can remove an independent executor
under section 149C on its own motion.Â  Tex.
Prob. Code Ann. Â§ 149C(a) (Vernon 2003).Â  The grounds for such removal
under this section could be summarized generally as mismanagement of the estate
or failure to comply with a required duty.

Â Â Â Â Â Â Â Â Â  There are, however, several
impediments to the application of this section.Â  First, no one has argued the
trial court purported to use this statute.Â  Second, there is nothing in the
record to indicate that the independent executor, Phillip Jr., was . . . Âcited
by personal service to answer at a time and place fixed in the notice . . . .ÂÂ 
 Id.Â  Further, the order does not give the cause for removal or order
the surrender of letters of administration previously issued to the independent
executor being removed.Â  Tex. Prob. Code
Ann. Â§ 149C(b) (Vernon 2003).

Â Â Â Â Â Â Â Â Â  This leads me to the question of
whether the trial court could have obtained or maintained jurisdiction over the
independent executor for purposes of considering his removal from that capacity
if the record does not show personal service as required by the statute.Â  This
has elements of both subject matter jurisdiction, removal of the independent
executor by the district court, and personal jurisdiction, jurisdiction over
the person of the independent executor.

Â Â Â Â Â Â Â Â Â  The question of subject matter
jurisdiction over the issue of whether to remove the independent executor and
personal jurisdiction over the person, Phillip Jr., in his capacity as
independent executor, does not end, however, with, nor is it entirely dependent
upon, resolving the issue of whether the motion to return property could be
treated as a motion for new trial.Â  This issue, the question of what subject
matter and what persons the trial court could exercise jurisdiction over,
manifests itself again because of the transfer, or failure to remand and
transfer, issues back and forth between the county court and the district
court.Â  The majority concludes, based in part on its determination that the
motion to return property was actually a motion for new trial of the March 17,
2003 order, that the trial court reformed its judgment, confirming Phillip Jr.
as independent executor and denying the motion to remove him by ordering his
removal and the appointment of a successor.Â  But the majority concludes the
trial court did not have the Âauthority to appoint a successor executor.Â

Â Â Â Â Â Â Â Â Â  As an aside, there is a practical
problem about the removal and appointment of a successor executor in this
case.Â  If Phillip Jr. was effectively removed on April 8, 2003, who was
responsible for everything that happened to the Estate from that date until his
successor was duly qualified?Â  The successor did not qualify until June 8, 2004,
which was after the trial court overruled Phillip Jr.Âs motion to set aside the
May 14, 2003 order.Â  Everyone treated the May 14, 2003 order as being in limbo
until the trial court ruled on Phillip Jr.Âs motion.Â  Query:Â  Does the partiesÂ
treatment of the order as not being final, but one over which the court
maintained jurisdiction, impact the analysis?

Â Â Â Â Â Â Â Â Â  Now back to the primary question Â deciding
whether the trial court obtained and maintained subject matter and personal
jurisdiction over the removal of Phillip Jr. as independent executor.Â  This is
an issue worthy of substantial analysis.Â  Why is it that the trial court did
not have the authority to appoint a successor executor but had the authority to
remove one?Â  The majority tells us that the trial court lacked this ÂauthorityÂ
Âbecause any issues regarding a successor executor were not transferred from
the county courtÂ to the district court.Â  See Tex. Prob. Code Ann. Â§ 5(b)(amended by Act of 2003,
78th Leg., ch. 1060, Â§ 2).Â  According to the majority, Âonce the contested
matter of whether to remove Krumnow as executor was resolved, the district
court should have transferred this contested portion of the probate proceeding
back to the county court for further proceedings not inconsistent with the
district courtÂs removal of Krumnow as executor.ÂÂ  This statement raises more issues
than it resolves.

Â Â Â Â Â Â Â Â Â  The first may be nothing more than
semantics, but it is a semantical problem courts have struggled with for
decades.Â  See Reiss v. Reiss, 118 S.W.3d 439, 443 (Tex. 2003); Ex
parte Seidel, 39 S.W.3d 221 (Tex. Crim. App. 2001). Â What do we mean when
we say a court has, or does not have, the ÂauthorityÂ to do something?Â  But
more importantly, what is the consequence of a court doing something it does
not have the authority to do?Â  If a court exceeds its authority, is it a
judicial error subject to review and correction upon proper preservation and
presentation of the error to an appellate court?Â  Or if a court exceeds its authority,
is its action void?Â  Voidness has serious and potentially long term
implications.Â  Normally, voidness is a consequence of a court being without the
jurisdiction to take some action.

Â Â Â Â Â Â Â Â Â  As used in context, and to have the
consequence described by the majority, they must be using it in the context of
jurisdiction.Â  This issue, just another of many deserving more analysis,
requires an examination of the Probate Code, amendments to the Probate Code,
the motions to remove the two different probate proceedings that had been filed
in the county court to the district court, the orders transferring both
proceedings, and the consolidation of those two probate proceedings by the
district court.Â  For my purposes in this special note, it is sufficient to say that
the change in the Probate Code which was apparently intended to result in only
the contested issues being transferred to district court, probably did not
contemplate a transfer of the entire probate proceeding, but there is nothing
that expressly prohibits such a transfer.Â  More importantly, there is no real
guidance to tell us what happens if, subsequent to the amendments, the entire
proceeding is transferred to the district court, as was previously done.

Â Â Â Â Â Â Â Â Â  Remember that if I am right on the AIM
not being a motion for new trial and the majority is right that once the
transferred contested issue is decided the district court loses its ÂauthorityÂ
to do anything other than to remand the transferred issue back to the county
court, the district court did not have the ÂauthorityÂ to reconsider the
removal issue after its first decision became final and thus should have remanded
the issue to the county court.

Â Â Â Â Â Â Â Â Â  Further, a complete analysis of the
issue of what a district court can rule on when a probate proceeding, or part
of a probate proceeding, has been transferred to it from a constitutional
county court, is going to get back into the issues of subject matter
jurisdiction and personal jurisdiction.Â  If the parties bring before the trial
court an issue that was not transferred, but would be transferred if filed in
the constitutional county court, that the trial court clearly has the authority
to decide if certain procedural prerequisites would have been fulfilled, and nobody
that has submitted their persons to the jurisdiction of the court complains
about the failure to fulfill those procedural requirements Â must the trial courtÂs
ruling be void if there is no error in the merits of that ruling?Â  This is the
dispositive question on the appointment of the successor executor.Â  This issue
also warrants further analysis.Â  In this instance, such a ruling is being set
aside because the issue was not filed in the constitutional county court and
then ordered transferred to the district court.Â  But ooops, the entire probate proceeding,
in fact the entirety of both probate proceedings, had been transferred to the
district court so there would have been no proceeding pending in the
constitutional county court in which to file any new issues which arose.

Â Â Â Â Â Â Â Â Â  And if you really want to get into
confirming that the majority analysis is lacking and incomplete, the issue of
appointing a successor was filed in the constitutional county court on October
10, 2002 and was pending when Phillip Jr. filed his motion to transfer the
entire matter to the 82nd District Court on October 29, 2002.Â  The ÂproceedingÂ
was transferred by an order signed on the same date.Â  Thus, if it is the
relevant criteria, this issue was clearly a pending and contested matter at the
time of the transfer of the entire proceeding to district court.

IN CONCLUSION

Â Â Â Â Â Â Â Â Â  It will not serve the purpose of this
special note to go into a full and detailed discussion of why I have not given
this case the time required to fully resolve it.Â  If for any reason a court
upon further review decides it wants to know more details than explained
herein, I will provide further explanation upon request.Â  I believe it is
sufficient to state in summary that in my discretion, I chose to work on cases
that were older, that otherwise had a higher designated priority than this
case, and it was my decision to delay my analysis in this case until I could
devote an adequate block of time to it for a full analysis. Â Further, there is
pending before us, another case involving some of the same complex issues
regarding jurisdiction that are presented in this case.Â  It is my belief that
these two cases should be developed together.Â  A majority of justices disagreed;
so they are kicking this case out the door before fiscal-year-end.Â  I note that
the issue-related case is much older.Â  And finally, I do not believe it is
appropriate to decide one case and to develop and issue a precedential decision
by which the Court will be bound, without each member of the Court being able
to give full consideration to the issues in each of the cases then pending with
interrelated issues.

Â Â Â Â Â Â Â Â Â  So, for all of the reasons given, I
can say no more than I am present but not prepared to vote on the merits of
this case as of the date the opinion of only two members of the panel is being
issued.Â  And because that opinion has issued, I will not spend further analysis
on the issues unless directed to do so by the Texas Supreme Court or the case
is reversed or our judgment set aside and remanded to us from the Texas Supreme
Court for further consideration of the merits.

POSTLUDE

Â Â Â Â Â Â Â Â Â  As I was completing work on this
Special Note, footnote 4 appeared in the majority opinion.Â  That footnote
states:Â  ÂThis is an accelerated appeal.Â  Chief Justice Gray has had the
opinion since April 26, 2005.ÂÂ  Frankly, in setting my work priorities, I had
overlooked that Â[t]his is an accelerated appeal.ÂÂ  I was not reminded of that by
the author of the opinion until the addition of the footnote approximately four
hours before the opinion was to be released.

Â Â Â Â Â Â Â Â Â  Normally, when new information comes
to my attention, I revise my prior work based on that information.Â  But I leave
the Special Note undisturbed and must now comment on why I overlooked this
issue and, more importantly, what additional problems lay buried in the
majority opinion.Â  Due to time constraints, it will also be necessary to
identify, but leave unresolved, issues that deserve further study.

Â Â Â Â Â Â Â Â Â  First, until the addition of footnote
4, it would have been improbable to discern that this was an accelerated appeal
by reading the draft opinion.Â  This is primarily because there is an extensive
discussion of the time in which a trial court has plenary power to modify a
judgment and the timing of filing a notice of appeal.Â  Included in the
discussion is the impact on the timing of filing the notice of appeal and the
trial courtÂs plenary power if a motion for new trial is filed. Â Of course,
this discussion is all about ordinary appeals Â not accelerated appeals.Â  If
this is an accelerated appeal, the party aggrieved by the trial courtÂs order
has 20 days to file a notice of appeal.Â  Tex.
R. App. P. 26.1(b).Â  In an accelerated appeal, a motion for new trial
does not extend the time in which to file the notice of appeal.Â  Tex. R. App. P. 28.1.

Â Â Â Â Â Â Â Â Â  So my response to footnote 4 is,
quoting Adam Sandler in The Wedding Singer, ÂOnce again, things that could have been brought
to my attention YESTERDAY!ÂÂ  The Wedding Singer (New Line Cinema 1998)
(motion picture).

Â Â Â Â Â Â Â Â Â  But of course, the problem here is
understandable and is caused by the multiple issues on which the order being
appealed was rendered.Â  One of the issues, the appointment of a receiver, is an
interlocutory order that is expressly made appealable.Â  Tex. Civ. Prac. & Rem. Code Ann. Â§ 51.014(a)(1) (Vernon Supp. 2004-2005).Â  The portions of the order which captured my attention and concern
Â regarding the appointment or removal of an independent executor Â is a final
order subject to direct appeal and is not considered interlocutory.Â  In re
Estate of Vigen, 970 S.W.2d 597, 598-599 (Tex. App.ÂCorpus Christi 1998, no
writ).

Â Â Â Â Â Â Â Â Â  This raises an interesting issue:Â 
Should there have been two notices of appeal, two briefing schedules, two
judgments Â one on an accelerated timetable and one on a regular timetable?Â 
Whatever the answer to that question, Âmacht nichtÂ Â it matters not; but I would
have tried to adjust my priorities had I been reminded that at least part of
this appeal is accelerated, even if the part I was focused on was not.Â  But in
defense of the author of the majority opinion, he did not know what issue I was
stuck on until my July memorandum to him.Â  Finally, in closing this postlude, I
realize that four months is an eternity to an individual litigant.Â  But if the
choice is the wrong answer fast versus a judgment that has been properly
considered by three judges in a deliberative process as the constitution,
statues, and rules contemplate, I, for one, will take the carefully considered
judgment.Â  A carefully considered judgment still may be erroneous, but it
stands a lot better chance of being right than having been issued because of an
artificially created deadline like a fiscal-year-end or the departure of a
briefing clerk.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Special
Note delivered and filed on August 31, 2005

Publish with Krumnow v. Krumnow, No.
10-04-00143-CV, issued August 24, 2005

Â 




APPENDIX A

This
Appendix is from Texas Parks and Wildlife v. E.E. Lowrey, No.
10-02-00317-CV, 2004 Tex. App. LEXIS 9824, * 16-17 (Tex. App.ÂWaco Nov. 3,
2004) (order) (Gray, C.J., dissenting) (not designated for publication).

Â 



dissenting Opinion to order withdrawing opinion



Â 

On July 21, 2004, over ninety days ago, we issued an opinion in this accelerated appeal that had been on file
since November 14, 2002.Â  A motion for rehearing was filed and we requested a
response.Â  We denied the motion on October 5, 2004.Â  Now, because of issues and developments not raised in this case, a majority of the Court wants to
change the result.Â  I have not had the time, or the opportunity, to consider
adequately the merits of the changes in the new opinion.Â  Moreover, I believe
that we should notify the parties of the issue that is being re-determined and
ask that they fully brief it before we reconsider it.

Under the circumstances, I believe
that it is unnecessary to withdraw the prior opinion.Â Â  Therefore, I dissent
from the order of November 3, 2004, withdrawing our opinion of July 21, 2004.Â  Further, there is no need to issue a new opinion immediately.Â  If the
issue is of such importanceÂand especially since we take an entirely different
directionÂI think we should only reconsider it after notice to the parties and
an opportunity for the parties to brief the issue fully; and only then give it
the full consideration that it deserves by the full Court.Â  After all, if the
issue merited the withdrawal of the opinion, surely it could wait long enough
to allow adequate consideration of such an important issue, an issue so serious
that the Court would withdraw the opinion on its own motion.Â  Apparently, for
some reason not explained to me, issuance of the opinion cannot wait.Â  I still
have not had time to evaluate the new opinion in a manner that I believe to be
appropriate under the circumstances; thus, I am not prepared to participate in
the hasty issuance of an opinion, with no compelling need to do so, under this
artificially created and imposed deadline.

So, in a case that was not argued,
two justices persist in their effort to issue an opinion in which only those
two justices have participated.Â  This is a direct violation of Rule of
Appellate Procedure 44.1(a): ÂIf the case is decided without argument, three
justices must participate in the decision.ÂÂ  Tex.
R. App. P. 44.1(a).Â  It may be that the two of them can withdraw the
opinion with only two votes.Â  But there is no room for doubt that it takes
three to issue the new opinion.

TOM GRAY

Chief Justice